BLUE VALLEY STATE BANK, APPELLEE, V. A. W. MILBURN ET AL., DEFENDANTS: WILLIAM PRAHL, APPELLANT.

FILED NOVEMBER 10, 1927. No. 25016.

*Hainer, Flansburg & Lee, D. B. Massie, M. H. Leamy,* and *A. C. Epperson,* for appellant.

*C. M. Skiles, Stewart & Greer, I. D. Beynon, W. L. Minor* and *M. L. Corey, contra.*

Heard before Goss, C. J., Rose, Dean, Day, Good, Thompson and Eberly, JJ.

Good, J.

Plaintiff brought this action against A. W. Milburn, William Prahl, and Milburn & Prahl, an alleged copartnership, to recover for an indebtedness evidenced by a number of promissory notes, in which plaintiff was named as payee, and the name of A. W. Milburn appeared as maker. Plaintiff alleged that Milburn and Prahl were copartners; that the notes evidence money loaned to the copartners for the partnership business, and that, by an agreement with the copartners, plaintiff was to make loans for the benefit of the partnership business and take the notes of Milburn, but that such notes, by agreement, were to be the obligation of both Milburn and Prahl. Prahl answered, denying that there was any partnership, and also denying any agreement, on his part, to be liable for loans that were evidenced by the notes of Milburn, and also pleading the statute of frauds and the statute of limitations, as defenses, and other matters, not necessary to be here considered. Subsequent to the commencement of the action, Milburn was adjudged a bankrupt and later departed this life, and the action was dismissed as to him and proceeded as an action against Prahl alone. A trial of the issues resulted in a verdict and judgment thereon for plaintiff. Defendant Prahl appealed.

This cause was heretofore argued to division No. 1 of the supreme court commission and an opinion prepared and approved, affirming the judgment of the district court. The cause is now before the court upon a motion for rehearing, which will be treated as though a rehearing had been allowed.

Numerous errors have been assigned by defendant for a reversal of the judgment, but in the motion for rehearing he has apparently abandoned all except two: (1) That the court erred in excluding exhibit No. 30, offered by defendant as a part of the cross-examination of the witness Stew-

art; (2) that the court erred in limiting the cross-examination of the witness Stewart.

The following is a brief summary of the facts disclosed by the record: Defendant Prahl is a resident of Pierce county, Nebraska. In February, 1918, he purchased a farm in Clay county, Nebraska, and entered into an arrangement whereby his son-in-law, A. W. Milburn, would take charge of and operate the farm. By the arrangement between them, Prahl was to furnish the farm and furnish certain stock, feed, seed and other personal property, and Milburn was to take charge of, and put in his time in operating, the farm, taking care of the live stock and marketing the same, and agreed to pay Prahl one-half of the net profits for the use of the farm and personal property. The Blue Valley State Bank loaned money and took promissory notes from A. W. Milburn over a period of about three years. In all, there were more than 60 notes executed by Milburn. Some of them were renewals, and at the time this action was tried four of the notes, so signed by Milburn, were unpaid, the face value of which aggregated nearly $8,000, in addition to the interest accruing thereon. One Hall, cashier of the bank at the time Prahl purchased the farm, testified that immediately thereafter there was a conversation in the bank with Prahl and Milburn, in which Prahl stated that he and Milburn had formed a copartnership to operate the farm and were to be partners in the operation of the farm; that the partnership would from time to time need money and would be compelled to borrow money with which to carry on its operations; that Prahl would be in his home in Pierce county, a considerable distance away, and it would be inconvenient for him to sign the notes; that Milburn would be upon the farm, which was near to the bank; that Prahl requested the bank to loan money and take the notes of A. W. Milburn, and that he, Prahl, would be liable thereon. Later, Hall was succeeded as cashier by W. E. Stewart. Stewart testified to conversations with Prahl in which, he states, Prahl, in substance, reiterated the statements con-

cerning the partnership to which Hall had testified; that the bank relied upon his statements and loaned the money in good faith, upon the theory that Prahl would be liable therefor. On the cross-examination of Stewart, it was developed that plaintiff had discounted some of the notes signed by Milburn and that it had also taken property statements from Milburn. Some of the notes, apparently, were discounted to a bank in Hastings. On the cross-examination of Stewart, defendant produced and submitted to the witness exhibit No. 30, which the witness admitted was in his own handwriting, and which purported to be a property statement made by A. W. Milburn. This property statement contained recitals to the effect that Milburn was a tenant, operating a farm of 440 acres, and that he had no partner in the business. This written statement was offered in evidence by defendant, as part of the cross-examination of Stewart, for the purpose of contradicting and tending to impeach and discredit the testimony, given by him, to the effect that he believed there was a copartnership and relied upon the statements made by Prahl. On objection, the exhibit was excluded. This is assigned as error.

We think it is a rule of quite general application that, where a witness, especially one interested, as was Stewart in this case, testifies in his direct examination to facts, and upon cross-examination admits that he has made a written statement, which tends to contradict the testimony, given on his direct examination, such written statement is admissible in evidence, as tending to discredit or impeach the testimony of the witness. Plaintiff contends, however, that the statement in this case shows on its face that it was directed to a bank in Hastings, and, although written by the witness, was never delivered to the bank or person, to whom it was addressed and for whom it was intended, and therefore it was as though the statement had never been made, and is not admissible as evidence to contradict or impeach the direct testimony of the witness. Plaintiff relies upon 22 C. J. 308, sec. 346, to sustain its contention. The text cited seems to support its position, but no reason

is announced for the supposed rule. Four cases are cited as supporting the text. An examination of the cases, however, shows that none of them supports the proposition, and that at least a part of them hold directly contrary to the doctrine announced in the text.

We think the true rule, and the one supported by the great weight of authority, is that, where a witness has made a written statement, which tends to contradict or impeach the testimony he has given on direct examination, such written statement is receivable in evidence, even though never delivered to the person for whom it was intended. In the instant case, we think the court erred in not receiving the exhibit in evidence, and that the error was prejudicial to the defendant. Stewart, cashier of the bank, and Hall, the former cashier, had both testified to a very unusual state of affairs, in that they were making loans and taking the notes of one person and seeking to hold another liable thereon as a supposed copartner, without any written evidence of any copartnership; without having the notes signed in the firm name; and without even knowing what the firm name was; and the evidence further discloses that Prahl had been requested, both by letter and in person, to sign some of the notes, executed by Milburn, and had declined and refused so to do. It is peculiar also in this; that one of the cashiers testified that he knew that Milburn was worthless and had nothing "but good intentions," and knew that Prahl was well-fixed financially. Yet, in the face of this state of facts, as claimed by them, they were taking the notes signed by Milburn alone, on the theory that Prahl was to be jointly liable with Milburn thereon, without a scrap of paper of any kind showing a purpose, on the part of Prahl, to be bound, or a scrap of writing of any kind showing the existence of a copartnership.

In view of the testimony given by the officers of the bank on direct examination, the exhibit, which tended to show that the bank's officers knew there was no partnership and therefore they could not have relied upon the alleged statements made by Prahl, would have been very harmful to

the plaintiff's contention and very helpful to the defendant. Its exclusion is an error so palpable and prejudicial that it requires a reversal of the judgment.

Defendant urges that the trial court unreasonably restricted the cross-examination of the witness Stewart. We have examined the rulings complained of, and, while the examination was quite restricted, we are unable to say that prejudicial error was committed in that respect. However, since the cause must be remanded for another trial, we think it proper to observe that the rule which prevails in this jurisdiction is: "When testimony is given by a witness on direct examination, from which an inference of fact arises favorable to the party producing him, anything within the knowledge of the witness tending to rebut that inference is admissible on cross-examination, and the opposing party is entitled to pursue that cross-examination as a matter of right." *Larson v. Hafer,* 105 Neb. 257. In that case it was further held that a denial of that right on cross-examination, when the ruling is prejudicial, is sufficient ground for reversal.

Defendant urges that this court should apply to the situation existing in this case the rule that the evidence must be clear and convincing to warrant a verdict for plaintiff. The rule that prevails in this jurisdiction is, ordinarily, in civil actions, that a preponderance of the evidence is all that is required to sustain an issue of fact. This court has, in certain classes of cases cognizable in a court of equity, held that the evidence must be clear and convincing, or, as is sometimes said, clear and satisfactory. All of the cases to which our attention has been called or which we have been able to discover, where the rule has been applied, were equity actions, and, so far as we are advised, the rule has never been applied in an action at law, triable to a jury.

It follows that the former judgment of this court is vacated and set aside, and the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.